**RITTER et, Plaintiffs-Appellants, v. BAKER, Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 22316.   Decided December 31, 1951.

Kitchen & Messner, Geo. W. Leyshon, of counsel, Cleveland, for plaintiffs-appellants.

Spieth, Spring & Bell, Richard D. Bovington, of counsel, Cleveland, for defendant-appellee.

## OPINION

By THOMPSON, J:

This case is an appeal to this Court on questions of law from a decision of the Common Pleas Court of Cuyahoga County, tried without a jury.

A petition was filed in the Common Pleas Court by two grandchildren of one Mrs. Lohman, a widow, who was 73 years of age at the time of her death on Dec. 9, 1947. These two grandchildren were children of a predeceased child of Mrs. Lohman by her first marriage. Plaintiffs together with two surviving children of decedent, one by the first marriage,

Nellie Kuchle, the other James Lohman, an adopted child of the second marriage, are heirs who would share any estate of which Mrs. Lohman died intestate. The sole defendant in the case is one Joseph Baker. The day before her death, which was Monday, Dec. 8th, Mrs. Lohman executed a deed conveying to Baker the dwelling located at 5753 Bavaria Avenue, Parma, where she had lived since 1944. The petition comprising four causes of action sought the aid of equity in cancelling the deed to the defendant.

The first cause of action charged that the deed was procured by defendant from Mrs. Lohman while she was in an unconscious condition and without mental capacity. The second cause of action alleged undue influence in obtaining the signature of the deceased to the deed in question. The third cause of action asserted failure of delivery. The fourth cause of action alleged that defendant, Baker, together with the two surviving children of Mrs. Lohman, namely, Nellie Kuchle and James Lohman, conspired to obtain the signature of Mrs. Lohman to the real property and to obtain a transfer of the home into the name of defendant, in order to defraud plaintiffs of their rightful interest in said property as heirs. The prayer of the petition was for cancellation of the deed and for an accounting.

The amended answer of the defendant denied the various allegations of the petition, and stated that during the month of October, 1944, he and the decedent widow, who was then advanced in age, entered into an agreement, the substance of which was that the defendant and the decedent would purchase the premises described in the petition, for the sum of $6900.00; that decedent would furnish $3000.00 and the defendant $3900.00, and that the defendant, in connection with the purchase, would furnish such additional sums as should prove necessary to· repair and improve the dwelling and also such sums as might be necessary to the decedent for her future support. Decedent was to have a life interest in the premises and after her death the premises were to belong to the defendant absolutely and in fee simple.

Defendant in his answer then alleged the acquisition of the property on the terms outlined and asserted that in fulfillment of his obligations under the agreement he had invested in the premises, by way of improvements, additional amounts approximating $8000.00 and had also furnished decedent during her lifetime such sums as were necessary for her support.

The charges in this case of fraud, undue influence and conspiracy are serious. The trial court, after hearing them, rendered judgment for defendant. Various assignments of error

have been filed in this Court. We have examined each of these assignments of error and find no error on the part of the trial court prejudicial to plaintiff in its rulings with reference to admission and exclusion of testimony. We shall address ourselves to the alleged assignment of error that the judgment of the trial court was against the manifest weight of the evidence.

There is no direct testimony to the character of Mrs. Lohman, but her actions speak eloquently. They express her unselfishness to her children, her independence and her sense of right. Having brought up two children, off-spring of her first marriage, she legally adopted her grandson, Robert Ritter, one of the plaintiffs herein and took care of him in her home from the time that he was six years of age. He continued to reside with her until his marriage in 1946. When her second marriage was not blessed by children, she and her second husband, Fred Lohman, legally adopted a child, James Lohman. She, therefore, had two children of her own and adopted two more, educating and making a home for them until their marriage. She never pushed any of her children out of the nest and she never asked anything of them. There is no testimony in the record that plaintiff, Ritter, or any other of her children, contributed to her support during her lifetime. As to whether she inherited anything from either husband is not clear and no assets of hers are disclosed, other than her interest in the dwelling house here in question.

Subsequent to the death of Mr. Lohman in 1942, Mrs. Lohman apparently managed for herself as her children left the home, one by one, to marry. She accomplished this by taking one or two boarders to help her maintain her overhead expenses. The witness, Mrs. Kretz and her husband came to board with Mrs. Lohman in May, 1947, and resided with her until her death. Joseph Baker, a young man had boarded at the Lohman house since 1937, that is, prior to Mr. Lohman's death in 1942, and he continued on as a boarder at the original residence where the Lohmans were renting.

In 1944, Mrs. Lohman was obliged to vacate the residence in which she and her husband had lived and was forced to find another home. She looked in vain. Baker then interested himself in helping her to locate a house, and finally found one on Bavaria Avenue, the present homestead. The price was apparently more than Mrs. Lohman was able to pay. Since Baker also wanted a home, the two agreed that she would put up what money she could, i. e., $3000.00, and he agreed to put up the balance of $3900.00. Neither gave thought to the wisdom of having the title reflect their true interests

and when the deed came, the record title was shown to be in Mrs. Lohman's name alone. There is no evidence that this was of concern to Baker, but Mrs. Lohman commented to her daughter on the fact that she intended to correct matters. Mrs. Kuchle testified that her mother alluded to the mistake in title, not only when she received the deed, but on numerous other occasions and on December 7th, while ill in bed. her mother asked Mrs. Kuchle to see that the title was straightened out immediately by the family attorney, Mr. Farnsworth.

The record shows that the plaintiff, Ritter, and his wife, stopped at Mrs. Lohman's home on Saturday afternoon, Dec. 6th, at which time the latter was downstairs lying on the davenport, obviously unwell. They stayed a couple of hours and sat with her, but did not carry on much conversation. They returned on Sunday evening and found her in bed upstairs. Again there was little, if any, conversation. The plaintiff, Ritter, was not at the house again until after her death. Witnesses as to Mrs. Lohman's condition on Sunday were her daughter, her daughter-in-law, Mrs. Jeannette Lohman, Baker, and Mrs. Kretz. That afternoon the invalid expressed to the husband of Mrs. Kretz the belief that she had not long to live. Testimony concerning circumstances of the execution of the deed on Monday morning, December 8th, was by Mrs. Kuchle, Mrs. Kretz, Baker, and Attorney Farnsworth. The lawyer told of preparing the deed at his office as result of instructions of Mrs. Kuchle, accompanied by Baker. Mrs. Kuchle's testimony concurred with the lawyer's that while the others waited outside, she preceded them into Mrs. Lohman's room. The daughter said that she tidied up Mrs. Lohman and brushed her hair and quoted her mother as saying, "I must look a mess." The attorney, Mrs. Kuchle and Baker told of the execution of the deed. When Mr. Farnsworth explained the details and asked Mrs. Lohman if she understood, the latter replied, "Ah ha." That she was too weak to execute her signature and that the lawyer guided her hand, is, of course, immaterial, if the testimony indicates that she comprehended and wanted the execution of the deed she ordered prepared. That there was testimony to that effect, sufficient to warrant the judgment of the trial court, seems to us clear.

It is apparent that Mrs. Lohman grew rapidly worse between Saturday when she was stricken, and Tuesday when she died, but the evidence not only of the execution of the deed but of the circumstances, immediately prior and subsequent thereto, show her not only conscious but determined to carry out the purpose shown in the testimony. The testi-

mony of the daughter-in-law was to the effect that at two or two-thirty Sunday morning, Mrs. Lohman went to the adjoining bathroom unassisted and fell while there. Even on Monday, after execution of the deed, the testimony of the daughter-in-law was that Mrs. Lohman was able to leave her bed with assistance.

It is to be borne in mind that Mrs. Kuchle, like plaintiff, was an heir in case Mrs. Lohman died intestate, leaving assets, and the daughter-in-law would, through her husband, also profit under such circumstances. So far as they were concerned, the testimony, both of the daughter and the daughter-in-law as to Mrs. Lohman's ability to execute the deed, was therefore against interest and their testimony was sufficient to warrant the trial court in deciding the case in favor of the defendant. Weighing the evidence as we have, we cannot find that the conclusion of the trial court was against the weight of the evidence.

This disposes of the first cause of action and as to the other causes of action, involving fraud, undue influence and conspiracy, we find no evidence whatsoever to substantiate these claims of plaintiffs.

With further reference to the execution of the deed by Mrs. Lohman, her desire to do so, and her impelling motive, are clearly explained by the evidence. From the time that she and Baker purchased the home in 1944, the latter, according to the uncontradicted testimony, scrupulously carried out all the terms of his agreement. His daily expense books, his cancelled checks, many of which were introduced in evidence, his letters to Mrs. Lohman, eight of which are in the bill of exceptions, show a most faithful and punctilious performance on his part. Laconic, as his letters and testimony show he was as solicitious for the welfare of Mrs. Lohman as the most devoted son of any mother. From the time of purchase of the house in 1944, he paid all taxes, all utility bills, all repairs and improvements. In his testimony he declared, "Every time I came home, if I found any bills on the dining room table, I paid them. I asked no questions." (Record, page 202.) True, this was only in line with his agreement, but his fidelity is impressive.

Another part of his agreement was to support Mrs. Lohman in her latter years and in this, likewise, he was faithful to his agreement and beyond that called for by its strict interpretation. Mrs. Lohman loved plants; he built a conservatory for her. She was found of birds; he bought her bird cages. She wanted to have chickens; he purchased fifty and built a hen house and even subscribed to a poultry journal for her. She loved music and he bought her a player and records. On

his travels, which required long absences, he kept her supplied with funds. On Sept. 7, 1945, he wrote to her: "In my hurry to leave, I left the bill for the linoleum on my writing desk, at least I think I did because I cannot find it anywhere with me. But here is two checks, one for $100.50, and the other for $42.14." On Oct. 4th of the same year he wrote: "Take it easy and don't work too hard. Here are two checks, one for $67.00 and the other for $49.39." Eight days later he wrote: "Hope this note finds you well * * * Here is two more checks for you, one for $59.05 and the other for $53.88." On July 6, 1946, he sent a letter enclosing a check for $64.82 and promised he would send another check within a week or so.

On Sept. 3, 1946 he wrote: "Here is that check as promised for last week, $66.83." On Sept. 21st a letter stated: "You will find the pictures and two sets of prints in with this letter and also a check for $67.10 * * *. Will send you another check next week." On Dec. 16th of the same year he wrote to her: "Here is check as promised. It is for $64.00, and I am sorry I could not send one sooner." On Oct. 2, 1947, he wrote, declaring: "Here are the four checks. They total $324.89. Should cover painting and leave some for you. Don't bank any of it but keep it for expenses around the house."

Baker earned $1.90 an hour as travelling service man. On that salary it is remarkable that he was able to save and turn over to Mrs. Lohman for herself and the home a total of $7873.09, as shown by the record, between 1942 and 1947. He testified that he did not keep account of every item spent and we do not doubt that the items totalled more, in view of the thoughtfulness and loyalty of this young man who so admirably met his agreements above and beyond the requirements of duty. There are many Joe Bakers in this world, but this one who has come within the recent range of our observation seems to us to merit a court award of the year.

We have recited the facts in some detail because there was no opinion by the trial court, and because of the claim of appellants that the judgment of the trial court was against the weight of the evidence, and we wish no mistake about the grounds of our decision.

As stated, we have examined the other assignments of error and find no prejudicial error on the part of the trial court.

The judgment is affirmed. Exceptions noted. Order see journal.

SKEEL, PJ, HURD, J, concur.