[Cite as *Byars v. Byars*, 2021-Ohio-3940.]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

|  |  |  |
|---|---|---|
| REGINALD A. BYARS, JR., et al. | : | |
| | : | Appellate Case No. 29007 & 29009 |
| Plaintiffs-Appellants | : | |
| | : | Trial Court Case No. 2019-MSC-341 |
| v. | : | |
| | : | (Appeal from Common Pleas |
| KEITH BYARS, et al. | : | Court – Probate Division) |
| | : | |
| Defendant-Appellee | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 5th day of November, 2021.

. . . . . . . . . . .

DAVID SALYER, Atty. Reg. No. 0052076 & ADAM R. WEBBER, Atty. Reg. No. 0080900, 4244 Indian Ripple Road, Suite 150, Beavercreek, Ohio 45440
 Attorneys for Plaintiff-Appellant Reginald Byers, Jr.

MICHAEL SANDNER, Atty. Reg. No. 0064107 & BRITTANY A. DOGGETT, Atty. Reg. No. 0090704, 2700 Stratacache Tower, 40 North Main Street, Dayton, Ohio 45423
 Attorneys for Plaintiff-Appellant Tracie Walton

V. GAYLE MILLER, Atty. Reg. No. 0091528, 120 West Second Street, Suite 501, Dayton, Ohio 45402
 Attorney for Defendant-Appellee Keith Byars

. . . . . . . . . . . . .

TUCKER, P.J.

**{¶ 1}** Reginald A. Byars, individually and as the Administrator for the Estate of Margaret Byars, and Tracie Walton appeal from a judgment of the Montgomery County Probate Court, which declared that Keith Byars was the owner of Margaret's house, based on the court's conclusion that a quitclaim deed purportedly executed by Margaret was valid and effective.

**{¶ 2}** We conclude that the deed was not valid or effective because it was not "signed" by Margaret, the grantor. She did not herself physically sign the deed; another person affixed Margaret's signature on the deed, and there was insufficient evidence that Margaret authorized that person to do this. We reverse the judgment of the probate court and remand for further proceedings.

## I. Factual and Procedural Background

**{¶ 3}** Margaret Byars died intestate in May 2018, survived by her five children: Reginald Byars, Keith Byars, Tracie Walton, Russel Byars, and Tanya Dowell. After Margaret died, Keith revealed to his siblings that their mother had executed a quitclaim deed the previous year giving him her Dayton home. Reginald, individually and as the administrator for Margaret's estate, filed a complaint in September 2019 against Keith, Tanya, Tracie, Russel, Tim Walton (Tracie's husband), and Monica Byars (Keith's wife). Tim was later dismissed from the action. Counterclaims and cross-claims were asserted. Eventually, only one claim remained: Reginald's claim for a declaratory judgment that Keith did not own Margaret's home because the deed was invalid and void.

**{¶ 4}** In October 2020, the trial court held a hearing on the claim at which Reginald, Keith, Tracie, and Russel testified. Sophia Johnson, the notary public who notarized the

deed to Keith, also testified. Johnson was also a longtime friend of the Byars family.

{¶ 5} The four siblings each testified about growing up in the home as a close, tight-knit family. After their father died in February 1987, they continued to be close and remained connected to Margaret, who treated them all equally. As adults, each child helped their mother when she needed help and supported her financially. Keith had a successful career playing football in the National Football League, and this gave him the financial resources to pay off his mother's mortgage on the house. Keith also spent over $80,000 renovating and remodeling the house.

{¶ 6} Margaret was diagnosed with breast cancer in 2017, and she moved into a nursing home. Sophia Johnson testified that on December 28, 2017, shortly after Margaret entered the nursing home, Johnson met with Margaret and Keith at the nursing home to notarize the deed. Johnson and Margaret had been friends for 50 years, and Johnson had known Margaret's children their entire lives. Johnson said that she noticed that, other than the notary acknowledgment, the deed had already been fully completed, including Margaret's signature. Johnson testified that Margaret did not appear to be weak and did not act in any manner that suggested that the home's transfer was not what she intended or that she was forced or tricked into the transfer decision. Johnson testified that she believed that Margaret understood the nature and consequences of the deed.

{¶ 7} Reginald, Tracie, and Russel testified that Margaret had loved all her children equally and consequently would have wanted ownership of the house to be divided among them equally. Keith testified that Margaret gave him the house as a gift, not as repayment for the renovations. Keith said that he could not recall who was present when Johnson notarized the deed and that he did not see his mother sign it either. The trial

court found Keith's testimony unreliable overall, saying in its written decision that "he was less than forthcoming and informative in answering even the simplest of questions." Keith did not record the deed until February 14, 2018, and explained that the delay was due simply to his procrastination. Keith did not tell any of his siblings about the deed until after Margaret had died, when he filed an eviction action against Tracie and her husband, who had been living in the house, with Margaret's permission, since the latter part of 2016. Keith paid the property taxes on the house, but his siblings continued to maintain the home and to pay the utilities.

{¶ 8} The trial court entered its judgment on December 15, 2020, declaring that Keith was the lawful owner of the house, based on the court's conclusion that the deed was valid and effective. The court found that Margaret had not herself physically signed the deed but that another had affixed Margaret's signature to it. Finding no evidence of fraud or forgery, the court relied on the notary's testimony that Margaret appeared competent and seemed to understand that the deed acted to transfer the home to Keith.

{¶ 9} Tracie and Reginald have separately appealed, and we have consolidated the two appeals.

## II. Analysis

{¶ 10} Tracie presents two assignments of error:

1. The Trial Court erred in finding that the Quit Claim deed was signed as required under Ohio Revised Code § 5301.01(A).

2. Even if the Quit Claim Deed was allegedly signed, the Court erred in finding that there was no fraud or forgery involved.

And Reginald presents four assignments of error:

1. The Trial Court erred in finding that a deed was "signed"—as required by R.C. §5301.01(A)—when no signature appeared on the document, no person witnessed the signing, and the undisputed evidence was that it was not the signature of the grantor.

2. The Trial Court erred in finding that the deed was not the product of fraud or forgery.

3. The Trial Court erred in failing to apply the correct burden of proof and failed to consider the validity of the *inter vivos* gift.[1]

{¶ 11} By statute, a deed that is lawfully executed must be "signed by the grantor." R.C. 5301.01(A). A deed that is signed—and acknowledged and recorded—raises a rebuttable presumption that the deed is "valid, enforceable, and effective," as well as a rebuttable presumption that the deed conveys the described property. R.C. 5301.07(B)(1).

{¶ 12} The trial court found that Margaret did not sign the deed. Indeed, a cursory examination of the evidence presented confirms that the signature on the deed looks nothing like Margaret's signature on other documents. Instead, Margaret's "signature" looks very much like the handwriting elsewhere in the deed—that of the person who

---

[1] This assignment of error is evidently a combination of two assignments of error that Reginald initially intended to present. In the list of assignments of error on page iii of his brief in Montgomery C.A. No. 29009, the third assignment of error differs and there is a fourth one:

> 3. The Trial Court erred in failing to apply the correct burden of proof to the correct person: in this case, the person asserting the validity of an *inter vivos* gift.
> 4. The Trial Court erred in finding that the deed reflected a valid *inter vivos* gift when there was no evidence proving any of the elements of a gift.

prepared it. The first issue, then, is whether the statutory signature requirement demands that the grantor herself physically sign a deed or whether another may sign for her.

{¶ 13} The trial court correctly concluded that the grantor need not actually sign a deed. The little caselaw there is on the signature requirement reveals that the signature requirement can, in certain circumstances, be satisfied even though the grantor did not physically affix his or her signature on the deed. The grantor's signature on the deed before the court in *Smaltz v. Meyer*, 3d Dist. Hancock No. 5-89-18, 1991 WL 3588 (Jan. 18, 1991), had been affixed by someone other than the grantor. Testimony at trial showed that the grantor had explicitly told the other person to sign the deed for him. The appellate court found no problem with this, quoting the discussion of the issue in Ohio Jurisprudence:

> "[T]he signature of the grantor, though essential to a valid deed, need not be in the grantor's own handwriting. He may execute the deed either by his own unaided strength, or with the assistance of another person in steadying his hand and tracing lines for him, or simply by verbally authorizing another to make the whole signature for him, provided it is done in his presence, and his adoption of a signature by affixing his mark thereto, the deed being in other respects regular, is as effective to transfer the estate as if his name had been written thereon in full by himself."

*Smaltz* at *4, quoting 35 Ohio Jurisprudence 3d, Deeds, Section 25. While the court noted that the grantor had failed explicitly to adopt the affixed signature with a mark, the court found that this omission was not dispositive. The court found that, considering all the evidence as to the execution of the deed, the omission of the grantor's mark was merely

"a possible defect in execution from an apparent oversight" and that "there is no proof that that oversight was fraudulent as to anyone." *Id.*

{¶ 14} Ohio Jurisprudence has since revised its discussion of this issue (and moved the discussion to a different section). Now it says: "[T]he signature of the grantor, though essential to a valid deed, need not be in the grantor's own handwriting. A grantor may execute the deed either on its own, or with the assistance of another person, so long as there is evidence that the grantor comprehended and desired the execution of the deed." 35 Ohio Jurisprudence 3d, Deeds, Section 18 (August 2021). In support of the last sentence, *Ritter v. Baker*, 64 Ohio Law Abs. 65, 110 N.E.2d 710 (8th Dist.1951), is cited. In that case, the deed was prepared by an attorney who brought it to an ill-in-bed grantor. The grantor was told about the execution of the deed, and the attorney explained the details and asked if she understood. The grantor replied affirmatively. Since the grantor was too weak to sign the deed, the attorney helped her by guiding her hand. The appellate court was unconcerned with the deed's execution: "That she was too weak to execute her signature and that the lawyer guided her hand, is, of course, immaterial, if the testimony indicates that she comprehended and wanted the execution of the deed she ordered prepared." *Id.* at 712.

{¶ 15} Based on the caselaw, we conclude that the statutory signature requirement may be satisfied by another affixing a grantor's signature on a deed so long as the evidence shows that the grantor comprehended the deed, wanted its execution, and authorized the other to sign it.

{¶ 16} Here, there is no dispute that Margaret did not physically sign the deed. Someone else affixed Margaret's signature on it, and the evidence suggests that that

person was Tanya Dowell, the one whose name is listed on the deed as the preparer. The question is whether the evidence shows that Margaret comprehended the deed, wanted its execution, and authorized another to sign it.

{¶ 17} The testimony of Sophia Johnson, the notary, reveals that Margaret comprehended the deed and perhaps even wanted its execution. Johnson testified that Margaret did not appear to be weak and did not act in any manner to suggest that her actions were the product of force or deceit. Johnson also testified that she believed that Margaret understood the deed's nature and consequences. But Johnson's testimony did not establish that Margaret authorized Dowell or anyone else to sign the deed for her. Indeed, the evidence did not definitively establish who affixed Margaret's signature to the deed. Dowell did not testify, and Johnson did not seem to know who had prepared the deed. Johnson testified only that, other than the notary acknowledgment, the deed form had already been completed when she arrived.

{¶ 18} Because the evidence did not establish that Margaret authorized someone else to sign the deed for her, the statutory signature requirement was not satisfied, which meant that none of the presumptions of validity under R.C. 5301.07(B) arose. Based on the evidence presented, it can only be concluded that the deed was not legally executed and was ineffective to convey Margaret's house.

{¶ 19} Tracie's and Reginald's first assignments of error are sustained, rendering moot the remaining assignments of error.

### III. Conclusion

{¶ 20} Because the deed here was invalid, unenforceable and ineffective, the trial court erred by declaring that Keith was the lawful owner of Margaret's house. The trial

court's judgment is reversed. This case is remanded for further proceedings.

. . . . . . . . . . . . .

WELBAUM, J. and EPLEY, J., concur.

Copies sent to:

David R. Salyer
Adam R. Webber
Michael Sandner
Brittany Doggett
V. Gayle Miller
Tanya Dowell
Hon. David Brannon